IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

WILLIE TOLBERT,                        )
                                       )
                Plaintiff,             )
                                       )
v.                                     )      No.:    3:21-CV-237-KAC-HBG
                                       )
TONY PARKER, et al.,                   )
                                       )
                Defendants.            )

## MEMORANDUM AND ORDER

Plaintiff, a prisoner proceeding pro se and *in forma pauperis*, filed (1) a second amended complaint purporting to allege violations of 42 U.S.C. 1983 [Doc. 9], and motions titled (2) "Motion: Declaration to Add unto the Face of the Record" [Doc. 6] and (3) "Motion: Rule 6. Computing and Extending Time [] for Motion Papers et al" [Doc. 7]. The Court addresses Plaintiff's motions, then screens Plaintiff's second amended complaint under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A. For the reasons set forth below, the Court denies Plaintiff's motions [Docs. 6 and 7] as moot and dismisses this action because the second amended complaint [Doc. 9] fails to state a claim upon relief may be granted.

## I.      PENDING MOTIONS

Plaintiff filed both of his motions [Docs. 6 and 7] before he filed his second amended complaint. These motions related to the permissible content of and timing of Plaintiff's second amended complaint. Because Plaintiff has filed his second amended complaint, and the Court will screen his second amended complaint, his earlier-filed motions are moot. Accordingly, the Court denies Plaintiff's "Motion: Declaration to Add unto the Face of the Record" [Doc. 6] and "Motion: Rule 6. Computing and Extending Time [] for Motion Papers et al" [Doc. 7] as moot.

## II.   SCREENING OF SECOND AMENDED COMPLAINT

### A.   Plaintiff's Allegations

As relevant here, Plaintiff maintains that another inmate stabbed him four times on March 25, 2021, in the shower area of his unit at the Morgan County Correctional Complex ("MCCX") after Defendant Correctional Officer ("CO") Garrison "unlawfully open[ed]" the wrong cell doors [Doc. 9 p. 4, 8, 18].  Plaintiff contends that he attempted to defend himself with a plastic mop but sustained "minor" injuries for which Defendant Nurse Sandy would not allow him to see a MCCX physician [*Id*. at 11-12, 17, 40].  Plaintiff states that he was sent to "the hole" the same day, and that Defendants Dana Daniels and Brandon Foster falsely made a disciplinary write-up against Plaintiff for possession of a deadly weapon [*Id*. at 5, 18, 55].  Plaintiff maintains that the attack on him was never properly investigated and documented, and that a disciplinary hearing against him was unfairly conducted in violation of various Tennessee statutes and Tennessee Department of Correction ("TDOC") policies [*Id*. at 5, 10, 18-19, 22].  Specifically, Plaintiff maintains that the disciplinary report filed against him contains false information and lacks a valid signature and that he was denied the assistance of a staff advisor at his disciplinary hearing [*See, generally, id*. at 18-22].   After the disciplinary hearing, Plaintiff was found guilty of possession of a deadly weapon, fined $5.00, and sentenced to thirty (30) days of punitive segregation [*Id.* at 52-53].

Plaintiff also appears to allege that MCCX is receiving "false federal funding" by allowing Phoenix/New Freedom Programs to operate at MCCX with a "false workbook" using an expired license [*Id*. at 27].  To remedy these alleged violations of his constitutional rights, Plaintiff asks the Court to award him monetary compensation against Defendants CO Garrison, Dana Daniels, Brandon Foster, "Ms. Moore," Stacy Oakes, "Nurse Sandy," Centurion Medical, Corporal Byrge,

Tony Parker, Tennessee Governor William Lee, Toshia Ridenour, and Phoenix/New Freedom Programs [*See id*. at 10, 29-32].

**B.      Standard**

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. §§ 1915(e)(2)(B); *see also Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**C.      Analysis**

"There are two elements to a . . . [Section] 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of*

*Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).

### 1. Violations of State Law/TDOC Policies

Plaintiff alleges that TDOC Commissioner Tony Parker and Tennessee Governor William "Bill" Lee are liable here because they are responsible for any violation of law or policy that occurs in a TDOC facility [*See, e.g.,* Doc. 9 p. 30]. Plaintiff also alleges that the other named Defendants violated various TDOC policies and Tennessee statutes in their actions toward him [*See, generally*, Doc. 9].

However, Section 1983 only addresses the "deprivation of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Failure to comply with a State standard, whether statute or TDOC policy, does not necessarily rise to the level of a Constitutional violation. *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (finding "[i]t has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983"); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (holding failure to follow policy does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Under the law, Plaintiff's allegations that Defendants violated State law and policy are not sufficient, standing alone, to state a claim for a constitutional violation. As such, the Court must dismiss these claims.

### 2. Disciplinary Write-Up/Proceedings/Grievance Review

Plaintiff appears to contend that Defendants Daniels and Foster filed a false disciplinary report against him [*See* Doc. 9 p. 5, 22]. He further alleges that Defendants Moore, Oaks,

Ridenour, and Byrge denied him a fair and accurate disciplinary hearing and grievance process [*See generally id.*].

As a preliminary matter, Plaintiff has no Constitutional right to be free from charges related to or convictions of prison disciplinary offenses. *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974). This is true even if a charge later turns out to be unfounded upon further investigation or process. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."). Therefore, none of Plaintiff's allegations related to his disciplinary write-up state a claim.

Moreover, with respect to the prison disciplinary hearing, the Supreme Court has held that "mandatory" language in a prison policy does not necessarily give rise to a liberty interest protected by the Constitution. *See Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). A Constitutional liberty interest exists if the disciplinary punishment imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486. Accordingly, a general failure to comply with prison regulations regarding disciplinary proceedings does not itself rise to the level of a Constitutional violation. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Therefore, neither allegations regarding the denial of a staff advisor at Plaintiff's disciplinary hearing nor infirmities in the paperwork itself raise a Constitutional claim.

Plaintiff fares no better with his allegations that he was denied an adequate grievance process. Inmates have no constitutional right to an effective grievance procedure. *LaFlame v.*

5

*Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) ("He cannot premise a § 1983 claim on allegations that the jail's grievance procedure was inadequate because there is no inherent constitutional right to an effective prison grievance procedure" (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996))). Accordingly, these allegations too fail to state a cognizable Section 1983 claim.

Moreover, Plaintiff was punished with a $5.00 fine and thirty days of punitive segregation. These conditions did not impose an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life, and thus, they afforded Plaintiff no liberty interest generating procedural due process rights. *See Sandin*, 515 U.S. at 486 (concluding that confinement in disciplinary segregation for 23 hours per day "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *Harris v. Truesdell*, 79 F. App'x 756, 758 (6th Cir. 2003) (finding inmate's punishment of 60 days in punitive segregation did not give rise to protected liberty interest). Accordingly, Plaintiff has failed to state a claim related to the disciplinary hearing and grievance process, and the Court must dismiss these claims.

### 3. Failure to Protect

Plaintiff claims that CO Garrison bears constitutional liability for opening the wrong cell doors, which allegedly allowed another inmate to assault Plaintiff [Doc. 9 p. 18]. However, to be liable, CO Garrison must have acted with deliberate indifference to Plaintiff's safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). CO Garrison must have known of a substantial risk of serious harm to Plaintiff and disregarded that substantial risk of serious harm. *Id*. at 837. Mere negligence or dereliction of duty cannot be the basis of a failure-to-protect claim. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (finding negligence insufficient to sustain a Section 1983 cause of action).

6

Here, even liberally construing Plaintiff's allegations, the second amended complaint sets forth no facts that permit the Court to infer that, prior to the alleged attack against Plaintiff, the other inmate posed a substantial risk of serious harm to Plaintiff, or that CO Garrison, or any other Defendant, was aware of any such risk and disregarded it. Accordingly, Plaintiff has failed to state a claim against CO Garrison, or any other named Defendant, for an alleged failure to protect Plaintiff. The Court must, therefore, dismiss Plaintiff's failure-to-protect claim.

### 4. "False Federal Funding" by Phoenix/New Freedom Programs

The second amended complaint is unclear as to what function "Phoenix/New Freedom Programs" serves at MCCX and how it is improperly licensed. And the second amended complaint fails to allege any facts from which the Court could infer that the program or its licensure status violated Plaintiff's constitutional rights such that a Section 1983 claim is properly alleged. *See, e.g., Corn v. Sparkman*, 82 F.3d 417, 1996 WL 185753 (6th Cir. Apr. 17, 1996) ("A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights.") (citation omitted). Accordingly, the Court must dismiss this claim.

### 5. Alleged Failure to Provide Adequate Medical Care

Plaintiff maintains that Defendants Centurion (TDOC's contract medical provider) and Nurse Sandy violated his constitutional rights by refusing to allow him to see an MCCX physician after he was stabbed [Doc. 9 p. 17, 30]. Where a private company contracts with the state to perform a traditional state function (such as providing medical care at a penal institution), it acts under color of state law and may be sued under 42 U.S.C. § 1983. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). However, Centurion cannot be subject to Section 1983 liability merely because it has employed someone who is alleged to have violated Plaintiff's constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691

7

(1978). Instead, Plaintiff must show that an official policy maker at Centurion adopted a policy or custom with "deliberate indifference" towards the constitutional rights of those affected by it, and that policy or custom was the moving force behind the constitutional injury. *See City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). Here, Plaintiff has not alleged any policy or custom of Centurion that served to violate his constitutional rights. As such, the Court will dismiss Centurion.

Moreover, Plaintiff may seek to hold Nurse Sandy liable only upon alleging that she acted (or failed to act) with deliberate indifference to a substantial risk of harm to Plaintiff. *See Farmer*, 511 U.S. at 839-40. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014). Where, as here, a provider gave the plaintiff some treatment, the plaintiff "must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Despite having been afforded an opportunity to file a second amended complaint that set forth "the who, what, where, when, and why" of his claims [Doc. 8 p. 3], Plaintiff has offered little to illuminate the relevant facts of this case. Plaintiff received some medical treatment after the alleged attack, as he alleges Nurse Sandy served as the "gatekeeper" who would not allow him to seek further treatment from a physician [Doc. 9 p. 17]. He does not allege that he was seriously

8

injured in the alleged attack, and he has filed a report as an exhibit indicating that both he and the other inmate had "minor" injuries [*See* Doc. 9 p. 40]. Accordingly, Plaintiff has failed to allege facts from which the Court could plausibly infer that he suffered a serious medical need that required additional care from a physician, as he now complains. And he has not demonstrated that the absence of any such care violated his constitutional rights. Accordingly, the Court must dismiss this claim.

## III.    CONCLUSION

For the reasons set forth above:

1.    The Court **DENIES** Plaintiff's motions [Docs. 6 and 7] as moot;

2.    Even liberally construed, Plaintiff's second amended complaint fails to state a claim upon which relief may be granted under Section 1983, and the Court **DISMISSES** this action under 28 U.S.C. §§ 1915(e)(2) and 1915A; and

3.    The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

**SO ORDERED**.

**ENTER:**

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

9